[No. 25894.    Department Two.    April 20, 1936.]

FRANK D. E. BIART *et al., Respondents,* v. R. R.
WOODS *et al., Appellants.*[1]

*C. W. Fristoe* and *Stephen E. Chaffee,* for appellants.

*Cheney & Hutcheson* and *Walter J. Robinson, Jr.,* for respondents.

BLAKE, J.—January 26, 1934, the treasurer of Benton county issued to defendant R. R. Woods a certificate of sale to lots 65, 66, 67, 94, 95, 96 and 97, section 22, township 13 North, Range 27 E. W. M.   This certificate was issued upon sale of the property for delinquent irrigation assessments levied by Priest Rapids irrigation district for the year 1932 in the sum of $208.50.   The assessment was levied in October or November of that year.

Plaintiffs became the owners of tracts 95 and 96 in September of the same year.   Their title did not appear of record, however, until November 30, 1934. Plaintiffs have at no time had or claimed any title or interest in any other of the tracts described in the cer-

[1]Reported in 56 P. (2d) 1016.

tificate of sale. Who were the owners of the other tracts, does not appear from the record.

It does appear, however, that, during the year 1932, one Forrest Strycker was, as lessee, farming all the tracts and using water upon them. The assessment was levied in his name and in a lump sum against all of the tracts—apparently without regard to the amount of land irrigated in each of the several tracts.

There were a total of twenty-eight acres in the tracts described in the certificate of sale. Tracts 95 and 96 contained ten acres. Water was used on only 2.51 acres, however, in 1932. The proportionate part of the entire assessment of $208.50 chargeable against tracts 95 and 96 was in the neighborhood of eleven or twelve dollars. The tracts were worth $1,500.

Plaintiffs did not know of the assessment or sale until after the treasurer's certificate had been issued to defendants Woods. They thereafter offered to pay the amount of the assessment chargeable against tracts 95 and 96. The officers of the irrigation district and the county treasurer were willing to accept such amount. They were advised, however, that they had no power to segregate the assessment and prorate it on the several tracts. The defendants Woods refused to release tracts 95 and 96 from the lien of the assessment, unless the entire amount ($208.50) called for by the certificate of sale was paid.

The plaintiffs thereupon commenced this action to quiet their title against the certificate of sale, at the same time tendering into court the sum of $12.77, the amount (with interest) of the assessment chargeable against tracts 95 and 96. Upon issue joined, trial was had, resulting in a decree favorable to plaintiffs. Defendants Woods alone appeal.

■ As we see it, but one question is raised on this appeal: Where taxes are levied *in solido* on several

tracts of land owned by different persons, has a court of equity power to segregate the assessment and permit redemption by one owner upon his paying the proportionate amount of the assessment chargeable to his property? The question was tersely answered by the supreme court of Mississippi, in *Swalm v. Sauls,* 141 Miss. 515, 106 So. 775, in the following language:

"Where property owned by two or more persons is subject to a common lien or charge, the jurisdiction of a court of equity to apportion between the owners, according to their respective rights, the burden of such a charge, is of ancient origin. The exercise of such jurisdiction is so well established by the authorities that the cases supporting it are almost innumerable.

"Appellee's lot was burdened with a charge, viz. the amount necessary to redeem it from the tax sales. The question of fact was what would be a just and equitable proportion of the amount necessary to redeem both lots should be paid by appellee. Appellant contends that under the law appellee was due to pay the amount necessary to redeem both lots in order to redeem his own. The state, county, and municipality were not concerned. They had received the taxes due them in the purchase price both lots brought at the tax sales. It was a question, therefore, alone between appellant and appellee. We have no hesitation in holding, under these facts, that appellee had a right to invoke the jurisdiction of a court of equity. If he had not, he was without a remedy, although his right was clear. Certainly he was under no obligation, legal or equitable, as between him and appellant, to redeem for appellant the other lot bought by appellant at the tax sale."

As stated in the quotation, authority is abundant in support of the assertion of such jurisdiction and the exercise of such power by courts of equity. *Madsen v. Bonneville Irr. Dist.,* 65 Utah 571, 239 Pac. 781; *Martin v. Eversole,* 255 Ky. 56, 72 S. W. (2d) 748; *Holt v. Wichita County Water Imp. Dist. No. 2,* 63 S. W. (2d)

(Tex. Civ. App.) 369; *Dietrick v. Mason,* 57 Pa. St. 40; *Knox v. Higby,* 76 Cal. 264, 18 Pac. 381; *Weber v. Keller,* 117 N. J. E. 17, 174 Atl. 893; *Cotzhausen v. Goetz,* 142 Wis. 628, 126 N. W. 115; *Barker v. Blake,* 36 Me. 433; *Gallishaw v. Jackson,* 99 S. C. 342, 83 S. E. 454; *Richey v. Moor,* 112 Tex. 493, 249 S. W. 172.

Appellants cite Rem. Rev. Stat., §§ 7436, 7438, 7443, 7444, 7445, 7446, 7447, 7450 and 7454 [P. C. §§ 3214, 3216, 3221, 3222, 3223, 3224, 3225, 3228, 3232]. Without undertaking to analyze these sections, it will suffice to say that we find nothing in them that can be construed to curb the inherent power of a court of equity to segregate the assessment and permit a redemption, as was done by the lower court in this case.

Appellants also cite *State ex rel. Federal Land Bank v. Stephens,* 182 Wash. 444, 47 P. (2d) 837. We fail to see what bearing that case can have on the question here involved. It was there held that, the certificate of sale being a contract, the period of redemption could not be extended by a subsequent act of the legislature.

Decree affirmed.

MILLARD, C. J., BEALS, and MAIN, JJ., concur.